Joachim **LANDRY** et al.

v.

**M. & W. MARINE WAYS, INC.,** et al.

Robert **HUGHES**

v.

Leonard **CHITTY,** Etc., et al.

Nos. 7593, 7689.

United States District Court
E. D. Louisiana.

Feb. 4, 1966.

Plotkin, Nelkin & Alvarez, Owen J. Bradley, New Orleans, La., for libelants.

Phelps, Dunbar, Marks, Claverie & Sims, Gerard T. Gelpi, New Orleans, for Leonard Chitty, d/b/a Tideland Towing Co.

AINSWORTH, District Judge.

This matter came on for hearing on a former day on motion of respondent, Leonard Chitty d/b/a Tideland Towing Company, for summary judgment and/or alternatively to dismiss the libels of Joachim Landry and Joseph Landry and Robert Hughes against Leonard Chitty d/b/a Tideland Towing Company and/or the tug TIDELAND.

The Court, having heard the argument of counsel and having considered the depositions, affidavits, exhibits and briefs in support thereof, is now ready to rule.

It is ordered that motion of respondent, Leonard Chitty d/b/a Tideland Towing Company, for summary judgment be, and the same is hereby granted.

### REASONS

The tug M/V TIDELAND, owned by respondent Leonard Chitty, was swamped and capsized in the Mississippi River on August 18, 1964 at Twelve Mile Point near New Orleans. It sunk in approximately 100 feet of water to the bottom of the river where it remained until early October 1964, more than six weeks, when it was raised by Marine Derrick Corporation and turned over to M. & W. Marine Ways, Inc., for repairs in accordance with written specifications made by Arthur Terry, marine surveyor. On October 14, 1964, immediately after it had been taken into M. & W.'s repair facilities, and while work was being done thereon, pursuant to the M. & W. contract for general overhaul, an explosion occurred injuring libelants.

Respondent Chitty, in support of his motion for summary judgment, attaches the discovery deposition of Mr. Chitty taken December 2, 1965, and the affidavit of Arthur Terry, marine surveyor, dated November 29, 1965, with attached repair specifications. There are no countervailing exhibits, affidavits or depositions by libelants.

The Terry repair specifications for the M/V TIDELAND state that "It is the intent of these specifications to return the vessel, her machinery and apparel to good working order that presumably existed prior to a sinking casualty." There follow numerous and detailed specifications which unquestionably disclose that there was to be a major overhaul of the tug which had lain in the mud at the bottom of the Mississippi River for six to seven weeks. Every part of the tug required renewal and rehabilitation from the exterior top of the pilothouse to the bottom of the hull. Among other things it was required that all machinery units be removed from the vessel, repaired, reinstalled and reconnected. Butane tanks, fuel oil wing tanks, fresh water tanks and air receivers were likewise to be drained, cleaned and all lines connecting thereto blown clear, all valve bonnets opened such that seats may be drained, all safety valves tested and set for requisite pressure way pressure vessel tanks and then all closed up and reconnected. (See item 59 of the specifications.) It would be difficult to imagine a vessel requiring more repairs than this one did following the casualty which sent it to the bottom of the river. The tug was, therefore, undergoing major renovation and repairs.

The respondent's exhibits show that the ship repairer, M. & W., was to do the job for a total of $17,069, that the tug was under the complete custody, care and control of the ship repairer at the time of the accident, and there were no employees of the shipowner nor any supervision, direction or control whatsoever by the shipowner.

It is clear, therefore, that the vessel was out of navigation from the time she sank on August 18, 1964 until the date of the accident on October 14, 1964. Though she had been refloated after having been raised from the river bottom, she was unable to maneuver or propel herself in any way and she was covered with mud, grease, dirt and grime and in a condition which one might expect from having been submerged in the muddy bottom of the Mississippi for six weeks. The shipowner had nothing to do with the method or manner of repair. Only ship repair employees were on the vessel at the time of the explosion. Mr. Chitty did not even know that an accident and explosion had occurred until some days later.

West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), is peculiarly applicable here, for it is true in the present case as well as in *West* that there is no express or implied warranty of seaworthiness to any person by the vessel owner where the vessel is undergoing major repairs and complete renovation and the shipowner has no control over the ship or the repairs, having hired the ship repairer to perform the overhaul and reconditioning of the vessel.

Libelants assert that the shipowner was under some kind of duty to warn the ship repairer of the grease, oil, dirt, etc., which conceivably might have been the medium in which an acteylene torch produced an explosion. But this inference is neither reasonable nor fair under the circumstances, for the ship repairer had been hired by specific contract to do a turn-key job according to definite, fixed specifications to a vessel which had been sunk for some time and which was unquestionably out of navigation but had been placed in the shipyard in order to return it to navigation. It cannot reasonably be stated that the shipowner was under any duty to instruct, warn, supervise or otherwise direct the work which it had contracted with the ship repairer to do. We do not think it possible under the circumstances here, which, as asserted by respondent shipowner, are not rebutted or controverted by libelants, that there is any warranty of seaworthiness due by the shipowner or anyone, including libelants, and no circumstances here which would justify any charge of negligence against the shipowner.

There is no genuine issue, therefore, as to any material fact and respondent is entitled, as a matter of law, to summary judgment and dismissal of these libels insofar as the shipowner, Leonard Chitty, is concerned.