**Daniel T. WARNER, Appellant,**

v.

**TRAVELERS INSURANCE COMPANY,
Appellee.**

**No. 13491.**

Court of Civil Appeals of Texas.

Houston.

Feb. 25, 1960.

Rehearing Denied March 17, 1960.

and thereafter appellant filed this suit in the District Court of Galveston County to recover compensation in the total sum of $2,950 under the Workmen's Compensation Law of Texas. From the order of the District Court sustaining appellee's motion to dismiss the cause for want of jurisdiction, appellant has perfected his appeal.

Appellant asserts by his one point of error that the Trial Court erred in dismissing the case for lack of jurisdiction since it is an action brought and cognizable under the Workmen's Compensation Law of Texas and is not exclusively within admiralty jurisdiction and the Federal Longshoremen's and Harbor Workers' Act.

Appellant had been continuously employed by Todd some three months as a chipper and caulker. For about three or four weeks during that time he worked in and about his employer's plate shop on dry land chipping and caulking. During the rest of the three months he did the same kind of work on ships. At the time of his injury he was approximately 12 feet above the water, standing on a scaffold mounted on a steel barge tied to and floating alongside the S.S. Greenwich which at the time was tied to one of the piers at Todd Shipyard in Galveston and floating on navigable waters. The work being performed by appellant at such time was repair work consisting of pulling down and caulking rivets on the bow of the Greenwich outside its hull. His injury occurred about 11:30 at night after he had been on the shift since about 5:00 o'clock, and he continued to work until about 1:30 the next morning. While using what he termed a "rough bobbin tool" in the caulking process, some foreign matter was thrown into one of his eyes, causing his injury.

Adams & Browne, J. Melvin Franks, Beaumont, for appellant.

Barker, Barker & Coltzer, Jerry D. Barker, Galveston, for appellee.

WERLEIN, Justice.

Appellant Warner, while in the course of his employment for Todd Shipyard Corporation, sustained an eye injury. He duly filed his claim with the Industrial Accident Board of the State of Texas. The Board dismissed the claim for lack of jurisdiction

It was shown that the S.S. Greenwich, which was undergoing repairs, had a gross tonnage of 7,291 tons and was an ocean-going cargo vessel engaged in regular commerce both before and after the repairs made at Todd Shipyard.

Appellant's employer carried compensation insurance covering its employees under the Workmen's Compensation Law of Texas, Article 8306 et seq., Vernon's Ann. Tex.Civ.St., and also under the Federal Longshoremen's and Harbor Workers' Compensation Act, Title 33, U.S.C.A. § 901 et seq. Although appellant applied for compensation only under the State law, it is alleged by appellee in its sworn motion to dismiss this suit that appellant's employer reported the accident to the United States Employees' Compensation Commission and notified the Deputy Commissioner at Galveston, who accepted jurisdiction and so notified the employer and appellant.

In compliance with the provisions of the Federal act, appellee paid compensation to appellant in the total amount of $100.28, which was accepted by him.

The facts in this case are not complicated. Todd's contract to make repairs on the S.S. Greenwich was a maritime contract. Warner was employed as a chipper and caulker subject to being assigned to either maritime or non-maritime work. Approximately one-third of his work was in and about Todd's plate shop on dry land and two-thirds of his time was spent in working in or on ships on navigable waters. The ship was an instrument of ocean commerce floating in navigable waters. At the time of his injury, Warner was engaged in making repairs on a completed ship and his work was maritime. The injury occurred on navigable waters. The repair work was to keep the ship from leaking and hence it was directly connected with navigation and commerce on the high seas. The work was not of a local nature or of local concern. It was not incidental to any non-maritime work that appellant may have been engaged in previously.

With such a simple and not uncommon state of facts, it would seem a simple task to state the applicable law. But here we find a field of doubt, uncertainty and great confusion, dating back to Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct.

525, 61 L.Ed. 1086, and which more recent decisions of the Supreme Court have not lessened. Under the Jensen case, it seems clear that Warner's claim would be maritime and within the exclusive jurisdiction of the Federal act. The Supreme Court held that the work in which Jensen was engaged, that of working as a stevedore unloading a cargo from a vessel on navigable waters of the United States, and his contract of employment and his injuries were all maritime, and therefore the rights and remedies of the parties were exclusively within maritime jurisdiction. Jensen has never been overruled. Appellant asserts, however, that under more recent expressions of the Supreme Court, the present case comes within the so-called twilight zone of Davis v. Department of Labor, 1942, 317 U.S. 249, 63 S.Ct. 225, 227, 87 L.Ed. 246, in which Justice Black, speaking for the Court, stated:

"Harbor workers and longshoremen employed 'in whole or in part, upon the navigable waters' are clearly protected by this Federal Act; but, employees such as decedent here occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation."

The Court continued:

"There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act."

It seems clear that Davis was engaged in work of a local nature not having a direct relation to navigation, and hence his case came within the undefined and undefinable twilight zone enunciated by the Court. Davis was a structural iron worker whose employer was engaged in dismantling an

abandoned drawbridge spanning a navigable river. At the time of thé accident he was on a barge to which steel from the bridge had been lowered for carriage to a place of storage a short distance away. He was engaged in cutting pieces of steel into proper lengths for loading and fell or was knocked into the stream and drowned.

In the instant case, Warner in making repairs to a completed vessel lying in navigable waters, was clearly engaged in work governed by maritime law, because such work had a direct relation to navigation and the injury occurred on navigable waters. The repair of an existing vessel is one of the most ancient of maritime transactions. Flowers v. Travelers Insurance Co., 5 Cir., 1958, 258 F.2d 220, and cases cited.

Appellant relies chiefly upon Emmons v. Pacific Indemnity Co., 1948, 146 Tex. 496, 208 S.W.2d 884; Indemnity Insurance Co. of North America v. Marshall, Tex.Civ. App., 1957, 308 S.W.2d 174, ref., n. r. e.; Davis v. Department of Labor, supra; Moores' Case, 1948, 323 Mass. 462, 80 N.E. 2d 478, affirmed Bethlehem Steel Co. v. Moore, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417; Baskin v. Industrial Accident Commission, 1949, 89 Cal.App.2d 632, 201 P.2d 549; 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523; Hahn v. Ross Island Sand & Gravel Co., 1959, 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292, and other cases, which he asserts place appellant within the so-called twilight zone and give him a right to elect to bring his case under the State Compensation Act.

Appellee contends that the cases relied on by appellant are for the most part distinguishable from the instant case, and that under the most recent expressions of the Supreme Court and the United States Court of Appeals, 5th Circuit, the present case comes within the exclusive maritime jurisdiction.

We think this case is indistinguishable from Flowers v. Travelers Insurance Co., supra. In that case the employee was a welder making repairs on a large ocean-going tanker. The vessel was in a floating dry dock at Todd's Shipyard in Galveston harbor. While the vessel was not actually floating in navigable waters, it was there in law since it was in a floating dry dock. The Court held that "His presence on board the ship, actively working as a welder, essential to the making of essential repairs, was nonetheless maritime even though 80% of his work was generally ashore in the plate department of the Shipyard." [258 F.2d 221.] The Supreme Court denied certiorari, which we understand is of no significance.

In Noah v. Liberty Mutual Insurance Co., 267 F.2d 218, the United States Court of Appeals, 5th Circuit, en banc, with Chief Judge Hutcheson and Circuit Judge Cameron dissenting, held that a longshoreman, drowned while loading a ship in the Mississippi River, was not in the Davis twilight zone, and that the Longshoremen's and Harbor Workers' Act provided the exclusive remedy. On the original hearing the Court had held that the work did fall within the twilight zone and that recovery could be had under the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1021 et seq. On rehearing, however, the Court was of the opinion that Hahn v. Ross Island Sand & Gravel Co., does not go so far as to hold that a longshoreman is in the twilight zone since the effect of such holding would be to overrule by implication the Jensen case and to expand the twilight zone to the point where all amphibious workers would be in the twilight zone, contrary to the Davis case. Both Jensen and Davis were cited with approval in Hahn v. Ross Island Sand & Gravel Co., and both are still the law.

We think Emmons v. Pacific Indemnity Co., supra, is distinguishable. In that case shipbuilding was the principal purpose for which the shipbuilding company hired its employees, including the injured employee, and the employee at the time of his injury was engaged in helping to build a deck house in reconverting an old barge, desig-

nated "Hull No. 236", into a fuel barge. The barge or hull, along with other hulls, forming a series, was anchored in the Sabine River, a navigable stream, with the first hull being tied to the pier. There was no showing such barge was ever moved from place to place, or that it had ever been licensed or commissioned for navigation. We think it clear that in Emmons the work being done was non-maritime since it was not repairs on a completed vessel but the construction of a deck house and reconversion of an old barge into a fuel barge, thus properly falling within the rule enunciated in Davis, permitting recovery under the State Compensation law.

In the Marshall case, supra, the injured party, a pipe-fitter, who claimed to have injured himself while lifting into position in the engine room of a ship a valve of some 80 pounds weight, was permitted to prosecute his claim under the State Compensation law. It does not appear whether the valve had been repaired and if so whether it was repaired on the ship or in the shop. If it had been repaired in the shop and was merely being returned to its position on the ship, then it would seem that the work being done in the ship was merely incidental to the non-maritime work done in the shop. It was shown that Marshall was doing his second tour of duty on the ship although he had been employed for a week or more. It was also shown that most of his work as a pipe-fitter was done on land, although he was subject to assignment on either ship or land, but even when assigned ship duty he might still perform a considerable part of his work in the pipe shop on shore. In the present case, Warner, when assigned to work on a ship, apparently performed all of his work on the ship and was doing so at the time of his injury. Moreover, the opinion in Indemnity Insurance Co. v. Marshall, supra, was handed down prior to the decisions in the Flowers and Noah cases by the United States Circuit Court of Appeals, 5th Circuit. We are, of course, required to follow the decisions of the Federal courts in determining whether the work was or was not of a maritime nature. In its opinion, the Court of Civil Appeals, in the Marshall case, was unable to draw any sound distinction between the facts in the Marshall case and those of the Moore case and the Baskin case, and felt that those cases must control, although the Court confessed difficulty in reconciling the Moore case and the Baskin case with statements contained in the opinion in the later case of Pennsylvania R. Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367, or even with the general argument in such case. We think the Marshall case is distinguishable from the present case if Marshall was in fact merely returning the valve to its position on the ship.

We think the instant case is distinguishable from the Moore and Baskin cases. In Moore's case there was much conflict in the evidence as to the proportion of the time spent by the employee on the piers and the proportion of time spent on the dry docks and vessels, but the Board found that as "tag man" the major portion of his work was on the piers, *but occasionally it took him aboard vessels.* At the time he was injured, the employee testified that "he was going to get where his operator [the crane operator] could see him, so that he could give signals." The crane was moving material from piers on land to dry docks or ships. Hence in getting on the ship in dry dock he was doing so to aid the crane operator in his non-maritime work.

In Baskin v. Industrial Accident Commission, supra, the petitioner was a materialman employed from March, 1943 until December 10, 1945, by Kaiser Co., Inc., at its shipyard No. 3. His work during that time was entirely on shore (or on ships under construction, which would be non-maritime work) with the exception of two or three tours of short duration when he was sent to work aboard ships being repaired. A crane on the wharf moved materials from place to place on ships tied up side by side at the shipyard wharf in San Francisco Bay.. One of the holds

on the "Moultre" was being repaired. The crane's boom could not reach the planks already on board to move them from one hold to another, and it became necessary to send men aboard to do so. Despite standing instructions that Baskin should not be sent aboard ships under repair, he was ordered into the Moultre to help, and while there fell down a hold and was injured. His work on the ship was merely incidental to and in furtherance of his non-maritime work on shore, and hence came within the twilight zone.

We think it is important to observe that in both the Moore and Baskin cases practically all of the work was being done on land and was non-maritime, and although the injuries occurred on navigable waters the injured employees were actually undertaking to further non-maritime work which they had been doing. In the present case, however, the work being done at the time of injury was not incidental to or in furtherance or continuance of any non-maritime work. True, the twilight zone seems to have been extended in both Moore's case and the Baskin case to include work not of mere local concern.

After the Moore and Baskin cases came Pennsylvania R. Co. v. O'Rourke, 344 U.S. 334, 73 S.Ct. 302, 304, 97 L.Ed. 367. In that case, by a 5 to 4 decision, the Supreme Court held that the Longshoremen's and Harbor Workers' Compensation Act applied, to the exclusion of the Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., to the claim of a brakeman for injuries sustained while releasing a defective hand-brake on a freight car aboard a car-float in navigable waters. The Court stated:

"This act [Longshoremen's and Harbor Workers' Act] and the Jones Act, 46 U.S.C.A. § 688 provided means for indemnification for injuries for all maritime employees who were beyond the constitutional reach of state legislation. A quarter of a century of experience has not caused Congress to change the plan. The 'Jensen line of demarcation between state and federal jurisdiction' has been accepted. Davis v. Department of Labor, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246. New Jersey could not have enacted statutes granting compensation' for respondent's injury on navigable water. Therefore respondent comes within the coverage of that portion of § 903(a) that includes those outside the reach of state compensation laws."

In Hahn v. Ross Island Sand & Gravel Co., supra, the injured plaintiff was employed as an oiler. His general duties were on a dredge operating on navigable waters, which was maritime employment. However, at the time he was injured he was performing a different type of work. He was ordered to assist in transferring a large gravel bin or hopper, used for loading sand and gravel onto trucks, from one barge to another. A power-driven crane on shore was employed to pick up the hopper and move it. The hopper was so constructed that trucks could be driven under it to receive their loads. After the hopper was moved and stowed, it became the plaintiff's job to go to the top of the hopper by means of a ladder nailed to it and loosen a cable used in the moving operation. He fell and was injured. The Supreme Court of Oregon held that the plaintiff's sole remedy was under the Longshoremen's and Harbor Workers' Act. The Supreme Court of the United States, reversing the case, held that the case was within the "twilight zone". We think the Hahn case is clearly distinguishable from the instant case. Hahn at the time of his injury was engaged in assisting in work definitely associated with and in furtherance of non-maritime work.

Although there still exists much confusion as to the scope of the twilight zone, we think from an analysis of the decisions of the Supreme Court that it clearly does not extend to cases such as the present suit in which the work being done was purely

maritime and in no way incidental to or in furtherance or continuance of any non-maritime work. We are of the opinion that the instant suit comes exclusively within the Federal Act, unless it can be said that the line of demarcation between maritime and non-maritime work has been completely obliterated so that a longshoreman or harbor worker may, regardless of the maritime nature of the task he is performing when injured, bring his suit either under the Federal Act or the State Compensation Act. It seems clear that the decisions of the Federal courts have not undertaken to obliterate such line of demarcation.

The judgment of the Trial Court is affirmed.