Robert **HUGHES**, Appellant,

v.

Leonard **CHITTY**, d/b/a Tideland Towing Company, et al., Appellees.

No. 26269.

United States Court of Appeals
Fifth Circuit.

Aug. 22, 1969.

Owen J. Bradley, New Orleans, La., for appellant.

Monte J. Ducote, New Orleans, La., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

WISDOM, Circuit Judge:

This case involves an injury to a longshoreman. Two questions are presented: (1) Whether this case is solely within admiralty jurisdiction or whether it is in the twilight zone of state and admiralty jurisdiction; (2) whether the liability insurance policies issued by Employers Mutual to M & W Marine Ways covered any liability of Canulette and Wall to Hughes. We hold that the case is solely within admiralty jurisdiction and that the policies do not cover Hughes's injury. Accordingly, we affirm the district court's dismissal of Canulette, Wall, and Employers Mutual.

## I.

Robert Hughes was employed as a carpenter for M & W Marine Ways, Inc. Leonard Chitty hired M & W Marine Ways, Inc. to overhaul and repair his tugboat, the Tideland, which had sunk in the Mississippi River. In October 1964, the Tideland was raised and taken to the M & W repair facilities. On October 14, 1964, Hughes and two shore side cabinet makers, Joachim and Joseph Landry, boarded the Tideland and went to the galley to repair the cabinets. Within minutes after the three men boarded the Tideland, an explosion occurred, severely burning them. Prior to the explosion, no marine chemist inspected the vessel nor was. any gas-free certificate issued. The evidence is undisputed that Hughes and the Landrys were not warned, prior to boarding the Tideland, that the vessel had not been made gas free.

Hughes and the Landrys brought suit against Chitty in the district court. The district court granted summary judgment in favor of Chitty on the ground that the vessel was out of navigation and no unseaworthiness claim could lie. The district court also concluded that Chitty was not negligent, thus defeating all other causes of action that Hughes and the Landrys might have had against Chitty. 257 F.Supp. 45 (1966).

After losing against Chitty, Hughes filed a supplemental libel against Ernest Canulette, the operations manager of M & W's shipyard, Charles Wall, a part owner of the shipyard, and the Employers Mutual Liability Insurance Company of Wisconsin, M & W's liability insurance carrier. The supplemental libel alleged negligence on the part of Canulette and Wall in their failure to free the vessel of gas before permitting "hot work", and in their failure to warn Hughes of the danger. The district court dismissed the suit against Canulette and Wall on the ground that the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 933(i),[1] is exclusive and grants immunity to fellow employees against damage suits. The court also dismissed the suit against Employers Mutual, reasoning that Employers Mutual could rely on Canulette's and Wall's immunity defense. 283 F. Supp. 734 (1968).

---

1. 33 U.S.C. § 933(i):

    The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: Provided, That this provision shall not affect the liability of a person other than an officer or employee of the employer.

## II.

■ The district court dismissed the action against Canulette and Wall on the ground that Hughes's sole remedy was under the Longshoremen's Act and that this Act grants immunity to fellow employees from damage suits. Hughes argues that this case is in the "twilight zone" of admiralty and state jurisdiction. If this case is in the "twilight zone" Hughes may proceed under either the Longshoremen's Act or the Louisiana Workmen's Compensation Law, LSA–R.S. 23:1021–23:1351. See Calbeck v. Travelers Ins. Co., 1962, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368; Davis v. Department of Labor, 1939, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246; Holland v. Harrison Bros. Dry Dock & Repair Yard, Inc., 5 Cir. 1962, 306 F.2d 369. If he can proceed under either, Hughes argues, the district court improperly dismissed Canulette and Wall since the Louisiana Workmen's Compensation Law does not grant immunity to fellow employees from damage suits.[2] See Travelers Ins. Co. v. Brown, 5 Cir. 1964, 338 F.2d 229, 237.

The district court concluded that Hughes's mandatory remedy was under the Longshoremen's Act since he was injured while repairing an out-of-navigation vessel in navigable waters. 283 F.Supp. 734, 737. Although it is well settled that vessel repair is a maritime function,[3] Hughes asks us to classify him as a land-based amphibian since he worked in M & W's shipyard carpenter shop.

This Court, en banc, has held that a longshoreman who is injured while engaging in maritime activities on navigable waters is not within the "twilight zone"; his sole remedy is under the Longshoremen's Act. Noah v. Liberty Mut. Ins. Co., 5 Cir. 1959, 267 F.2d 218. Moreover, the Louisiana Supreme Court, in Ellis v. Travelers Ins. Co., 1961, 241 La. 433, 129 So.2d 729, has held that the Louisiana Workmen's Compensation Act is inapplicable to longshoremen injured while performing work on vessels afloat on navigable waters. Hughes's exclusive remedy therefore is under the Longshoremen's Act. The district court properly dismissed Canulette and Wall since the Longshoremen's Act grants them immunity from suit.

## III.

Hughes sued Employers Mutual, not as the personal liability insurer of Canulette and Wall, but as the liability insurer of M & W. Employers Mutual provided full liability insurance coverage for M & W through two policies: (1) a standard workmen's compensation policy; (2) a general liability policy. The workmen's compensation policy generally covered all sums payable by M & W as workmen's compensation under the Louisiana Workmen's Compensation Act and the Longshoremen's Act. This policy also provided coverage for all injuries sustained by M & W's

---

2. LSA–R.S. 23:1101:
    When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.
    Any employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent.

3. See Kossick v. United Fruit Co., 1961, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56; Alcoa Steamship Co. v. Charles Ferran & Co., 5 Cir. 1967, 383 F.2d 46.

employees in the scope of their employment not covered by workmen's compensation.[4] The general liability policy provided liability coverage for M & W, its executive officers, directors, and shareholders while acting within the scope of their duties. Excluded from coverage of this policy were liabilities compensable by workmen's compensation and all other liabilities to employees arising out of and in the course of their employment.[5]

■ Hughes concedes that he cannot sue Employers under the workmen's compensation policy for the negligence of Canulette and Wall. He urges, however, that the general liability policy covers the negligence of Canulette and Wall. Hughes's position is based on the definition of the "insured" in the policy. "Insured" is defined as "the named insured * * * any executive officer, director, or stockholder [of the named insured]". Since Canulette, the operations manager of the shipyard, and Wall, a part owner of the shipyard, fit into the definition of the "insured", so the argument runs, the policy covers their negligence. Although Exclusion (f)

of the policy excludes "any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation law", Hughes argues that this exclusion does not cover him since neither Canulette nor Wall is liable to him for workmen's compensation.

This apparent loophole in the general liability policy has been closed by Exclusion (g) of the policy. Exclusion (g) excludes liability to "any employee of the insured arising out of and in the course of his employment by the insured". Thus even though some negligence of Canulette and Wall may be covered by the policy, the policy clearly does not cover their negligence to employees of M & W. Hughes was clearly an employee of M & W who was injured in the course of his employment. He is therefore not covered by the general liability policy.

This result is supported by the purpose of the two policies. The workmen's compensation and general liability policies were meant to provide a comprehensive liability package. The workmen's compensation policy covered all liabilities to employees; the general lia-

---

4. I. Coverage A—Workmen's Compensation
   To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.
   Coverage B—Employers' Liability
   To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained in the United States of America, its territories or possessions, or Canada by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations or in operations necessary or incidental thereto.

   *   *   *   *   *

   EXCLUSIONS
   (f) under coverage B, to any obligation for which the insured or any carrier as his insurer may be held liable under the workmen's compensation or occupational disease law of a state designated in Item 3 of the declarations, any other work-

men's compensation or occupational disease law, any unemployment compensation or disability benefits law, or under any similar law.

5. I. Coverage A—Bodily Injury Liability.
   To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

   *   *   *   *   *

   EXCLUSIONS
   (f) under coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;
   (g) under coverage A, except with respect to liability assumed by the insured under a contract as defined herein, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured;

bility policy covered all other liabilities. Exclusions (f) and (g) of the general liability policy point this out. They closely parallel Coverages A and B of the workmen's compensation policy. Thus we think the two policies were meant to be an integrated unit and mutually exclusive in coverage. We therefore hold that since Hughes was an employee of M & W who was injured in the course of his employment, he cannot recover for the negligence of Canulette and Wall under the general liability policy, and accordingly affirm the dismissal of Employers Mutual.

Since we construe the general liability policy issued by Employers Mutual to M & W to exclude any liability for injuries to employees, we do not reach the question whether the grant of immunity to fellow employees from suit under the Longshoremen's Act precludes a suit against the fellow employee's liability insurer under the Louisiana Direct Action Statute.

The judgment is affirmed.