632 A.2d 1305

**WELLSVILLE TERMINALS COMPANY, Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD, (ZACHARIAS), Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1993.

Decided Nov. 16, 1993.

Steven P. Fulton, Reed, Smith, Shaw & McClay, Pittsburgh, for appellant.

Judd F. Crosby, Pittsburgh, for Donald Zacharias.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

The question presented is whether the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, *supplants* the Pennsylvania Workmen's Compensation Act ("PWCA"), 77 P.S. § 1 *et seq.*, or merely *supplements* it when a worker is injured while making repairs to a barge floating in the Ohio River. The Commonwealth Court held that the LHWCA merely supplemented the PWCA and the two acts shared concurrent jurisdiction. For the reasons stated below, we reverse the order of the learned Commonwealth Court.[1]

A review of the record reveals the following. Appellant (Employer) is an Ohio based company engaged in repairing, cleaning, loading and unloading barges. Employer has no facilities, land-based or otherwise, in Pennsylvania. It does, however, repair barges floating in the Ohio River in Pittsburgh for another company.

Employer employed Appellee, (Claimant), an Ohio resident, as a welder and assigned him to cleaning and repairing barges floating on the Ohio River in Pittsburgh. Claimant performed no work on land in Pennsylvania for Employer, except that he

---

1. Our scope of review in this matter is limited to determining whether there has been a constitutional violation, or an error of law, or a violation of Board procedure, and whether the necessary findings of fact are supported by substantial evidence. 2 Pa.C.S.A. § 704; *Pieper v. Ametek–Thermox Instruments*, 526 Pa. 25, 584 A.2d 301 (1990).

drove himself and other co-workers between their homes in Ohio and the Pittsburgh work site on company time.

On August 4, 1975, Claimant fell and sustained an injury while working on a barge floating on the Ohio River. It is undisputed that Claimant's injuries would have been compensable under the federal LHWCA if Claimant had filed a claim within the one year limitations period applicable to the LHWCA. However, Claimant never filed for benefits under LHWCA. Further, Claimant did not file a claim for benefits under the PWCA until 1977, almost two years after the accident, and almost one year after the limitations period under the LHWCA had expired.[2]

On May 2, 1980, a workmen's compensation referee denied Claimant's claim for benefits, finding that Claimant's exclusive remedy was under the LHWCA. On appeal to the Workmen's Compensation Appeal Board, the case was remanded to another referee who, eight years later, reversed the earlier referee's decision, and granted Pennsylvania workmen's compensation benefits to Claimant. The Workmen's Compensation Appeal Board affirmed the second referee's decision. Employer appealed to the Commonwealth Court, which affirmed the decision of the Workmen's Compensation Appeal Board, 148 Pa. Cmwlth. 197, 610 A.2d 520.

Two cases, *Davis v. Department of Labor*, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942) and *Sun Ship, Inc. v. Commonwealth of Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), form the basis of the Commonwealth Court's rationale in determining that the LHWCA and the PWCA share concurrent jurisdiction in the case *sub judice*, and that Claimant is entitled to a claim under either Act. The Commonwealth Court holds that because of the "nexus between the activity in which the employees were engaged and the land" this case aligns itself with *Sun Ship*, where state

2. Claimant also filed a benefits claim under the Ohio compensation system at the same time he filed his PWCA claim. The Ohio Bureau of Worker's Compensation denied that claim on January 19, 1978 holding that his claim was within the exclusive jurisdiction of the LHWCA. The Bureau's denial was affirmed by the Industrial Commission of Ohio on November 1, 1979.

workers compensation benefits were granted. The Commonwealth Court further suggests that because "Claimant's work was sufficiently land-based," his claim falls within the concurrent jurisdiction of both the LHWCA and the PWCA. The Commonwealth Court suggests that because Claimant was repairing a barge that was tethered to the land, and because Claimant was required to drive himself and co-workers from their homes in Ohio to the work site in Pennsylvania, Claimant's work was "sufficiently land-based". With this analysis, this Court cannot agree, and for the reasons set forth below, we reverse the order of the Commonwealth Court.

The LHWCA was originally designed to provide protection to maritime workers who were barred from making claims through state workmen's compensation plans as a result of the United States Supreme Court's ruling in *Southern Pacific Company v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). *Jensen* barred such claims in order to maintain a uniform maritime law, in accordance with Article III, Section 2 of the United States Constitution.

But the scope of *Jensen* has been narrowed. In 1942, the Court in *Davis* recognized that many injured workers were uncertain under which compensation program, state or federal LHWCA, they could rightfully claim. This confusion created undue expense and wasted effort, and caused many claimants to allow their limitations periods to pass in one jurisdiction while busily pursuing their claim in the other jurisdiction. *Davis* remedied this situation by providing what has come to be known as a "twilight zone" for some workers injured in navigable waters. These were workers who could not be strictly defined as either maritime or land-based. *Davis* itself dealt with a structural steelworker employed by a contributor to the State Workmen's Compensation Fund on a job dismantling a bridge over a navigable river who was killed when knocked off a barge to which steel was being lowered. Under *Davis*, a "maritime but local" category was created for workers who were injured in navigable waters but who were performing duties which were not traditionally maritime. Workers who fit into the *Davis* "twilight zone" would be

entitled to a claim under either the LHWCA *or* the state workmen's compensation program.

In 1972, Congress extended jurisdiction under LHWCA landward to include piers, wharfs and other adjoining areas customarily used by maritime employees. *See* 33 U.S.C. § 903(a). In *Sun Ship*, this landward extension of the LHWCA was interpreted so as to *not* preempt the state workmen's compensation laws which had historically applied to land-based injuries. Thus, just as *Davis* extended state workmen's compensation programs slightly into navigable waters, so do the 1972 Congressional amendments and *Sun Ship* extend the federal LHWCA slightly onto land.

*Davis* and *Sun Ship* have defined and narrowed the scope of *Jensen*. Nonetheless, maritime employees who are performing traditionally maritime functions and are injured over navigable waters, under *Jensen*, are constitutionally barred from recovering under any state workmen's compensation law.

In *Sun Ship*, the United States Supreme Court held that state worker compensation programs may hold concurrent jurisdiction over injuries that fall within the coverage of the LHWCA which had been slightly extended *onto land* as a result of the 1972 Congressional amendments. The Court relied heavily on its interpretation of the legislative intent behind the specific language of the amendments which are limited to that portion of the LHWCA coverage which extends *onto land*. The Court found that the 1972 "land-based" amendments were intended to address the "paucity of relief" available to injured maritime workers under the state compensation laws, by providing a more generous federal LHWCA in the cases of *land-based* injuries to traditionally maritime employees. It was this more generous interpretation of the legislative intent behind the "land-based" amendments which led the *Sun Ship* Court to hold that the LHWCA and the PWCA share concurrent, and therefore less restrictive jurisdiction. However, the United States Supreme Court's holding that the PWCA shared concurrent jurisdiction with the LHWCA applied only to that part of the LHWCA which had been extended onto land by the "land-based" amendments.

The *Jensen* doctrine, which protects a uniform maritime law and does not deal with land-based activities, was completely unaffected by the *Sun Ship* decision. Under *Jensen*, an injury over navigable waters still falls within the exclusive jurisdiction of the LHWCA.

The fact that the barge upon which Claimant was injured was tethered to the shore can, to our minds, only be viewed as an extraordinarily tenuous connection with the land. The barge was floating in the river; its only "nexus" to the land was a cable holding the barge steady in its position on the river. It is not at all uncommon for ships to be tethered to the land during repairs, and ship repair is clearly a traditional maritime activity. *Hughes v. Chitty*, 283 F.Supp. 734 (E.D.La.1968), *aff'd*, 415 F.2d 1150 (5th Cir.1969); *Warner v. Travelers Ins. Co.*, 332 S.W.2d 789 (Tex.Civ.App., Houston 1st Dist., 1960); *Noah v. Liberty Mut. Ins. Co.*, 267 F.2d 218 (5th Cir., La., 1959).

We are not persuaded by the suggestion that Claimant's duties were sufficiently land-based to fit within the scope of *Sun Ship* because he was required to drive himself and his co-workers between their homes in Ohio and the work site in Pennsylvania. Claimant and his co-workers were necessarily required to physically transport themselves from their homes to the work site in order to do their work. As the distance between Wellsville, Ohio and Pittsburgh, Pennsylvania is fairly substantial it simply behooved Employer to provide transportation and reimbursement for time spent in transit. But the attempt to equate the concept of "land-based" activities as contemplated in *Sun Ship* with the Employer's economical solution of the problem of transporting workers to the work site is not at all convincing in light of the clear and overwhelming evidence that Claimant was hired as a welder to make ship repairs on a barge floating on the Ohio River.[3]

3. Further, the United States Supreme Court has resolved the question of what impact the mode of a claimant's commute to work, whether by auto or by maritime transport, will have on his or her coverage. In *Herb's Welding Inc. v. Gray*, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), the United States Supreme Court denied LHWCA benefits to a claimant who repaired land-based pipelines, but traveled to his

We believe that the focus must first be on the nature of the injury and the nature of the activity engaged in at the time of the injury. Although not controlling, we agree with the view adopted by the Fifth Circuit in *Flowers v. Travelers Insurance Co.*, 258 F.2d 220 (5th Cir., Tex., 1958) *cert. denied,* 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582 (1959), where a claimant was injured while making repairs to a ship while "floating drydock in Todd Shipyard in Galveston Harbor." *Id.* at 221. Although eighty percent of that claimant's work was done ashore in the plate department at Todd Shipyard, the United States Court of Appeals determined that "[t]he non-maritime nature of the so-called regular work or duties is completely irrelevant." *Id.* at 221.

*Flowers* held that the LHWCA provided the exclusive remedy and that the "twilight zone" exception did not apply because "[t]he outlines of a case of an injury received on navigable waters while engaged in essential repairs to an existing vessel have long been clear and distinct.... As to them there is no twilight." *Id.* at 228. *See also, Warner v. Travelers Ins. Co.*, 332 S.W.2d 789, 791 (Tex.Civ.App., Houston 1st. Dist., 1960) (explaining the irrelevancy of land-based activity when a maritime employee is injured while performing traditional maritime work on navigable waters). Although Claimant had some land-based duties, his injury occurred over

varied work sites, on company time, by boat on navigable waters. In holding that the claimant was covered only under the state compensation program, the Court stated:

[Claimant] traveled between platforms by boat and might have been covered, before or after [the "land-based amendments of the LHWCA of] 1972, had he been injured while in transit.... Any coverage attributable to the LHWCA itself was de minimis. *We also note in passing a substantial difference between a worker performing a set of tasks requiring him to be both on and off navigable waters, and a worker whose job is entirely **land**-based but who takes a **boat** to work.* *Herb's Welding*, 470 U.S. at 427, n.13, 105 S.Ct. at 1421, n.13, 84 L.Ed.2d at 416, n.13 (citation omitted; emphasis added). Borrowing from the United States Supreme Court, we in Pennsylvania can, by changing only two words, but by no means the spirit of the language, confidently state that we also note a substantial difference between a worker performing a set of tasks requiring him to be both on and off navigable waters, and a worker whose job is entirely **maritime**-based but who takes an **automobile** to work.

navigable waters while he was engaged in the traditional maritime activity of ship repair.

Under the instant facts, we hold that the Commonwealth Court erred as a matter of law in applying the *Davis* and *Sun Ship* "twilight zone" exceptions to the *Jensen* doctrine.[4] Accordingly, the decision of the Commonwealth Court is hereby reversed.

LARSEN, J., did not participate in the consideration or decision of this case.

PAPADAKOS, J., files a dissenting opinion.

PAPADAKOS, Justice, dissenting.

I see no difference between repairs to a ship tethered to land and repairs to a barge tethered to land. In *Sun Ship, Inc. v. Commonwealth of Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), the United States Supreme Court permitted workers injured while repairing a ship to seek compensation for their injuries through the Longshoremen and Harbor Worker's Compensation Act ("LHWCA") and our Workmen's Compensation Act. In the case *sub judice*, the function performed by the claimant was identical in that he was repairing a barge tethered to the shore. I cannot fathom the gyrations performed by the majority to avoid the obvious.

I find no error of law, or a violation of Board procedure, and I find that the necessary findings of fact are supported by substantial evidence. Our scope of review is satisfied and we

4. In addition, we note that the *Davis* "twilight zone" exception was originally created with the intent to protect claimants who might mistakenly choose the wrong jurisdiction to file their claim, and subsequently lose their claim in the other jurisdiction to the limitations statute. There is no evidence that such was the situation in the instant case. Almost a year after the LHWCA limitations deadline had passed, Claimant filed a claim under the PWCA—his first claim under either the LHWCA or the PWCA. There is no evidence that Claimant was confused as to the appropriate jurisdiction. Claimant simply sat on his rights, and consequently lost his LHWCA claim to the limitations statute. Even if *Davis* did apply to Claimant, which it does not, this is not the type of claimant the *Davis* Court intended to protect when they created the "twilight zone" exception to the *Jensen* doctrine.

must affirm. The learned Commonwealth Court has done its job well and I concur in its conclusion. I, therefore, am compelled to dissent and I would affirm on the basis of the excellent opinion of the Commonwealth Court.