940 A.2d 351

Daniel McELHENEY

v.

**WORKERS' COMPENSATION APPEAL BOARD (KVAERNER PHILADELPHIA SHIPYARD).**

**Appeal of Kvaerner Philadelphia Shipyard.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 2007.

Decided Feb. 19, 2008.

Paul C. Cipriano, Jr., for Kvaerner Philadelphia Shipyard, Inc.

Amber Marie Kenger, Richard C. Lengler, Harrisburg, for Worker's Compensation Appeal Board.

Brian R. Steiner, Steiner, Segal, Muller & Donan, Reading, for Daniel McElheney.

CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN, FITZGERALD, JJ.

## *OPINION*

Chief Justice CASTILLE.

The single issue before the Court is: when is an injured worker entitled to concurrent compensation under both the federal Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, and the Pennsylvania Workers' Compensation Act ("PWCA"), 77 P.S. § 1 *et seq.* Resolution of this issue turns on the construction of terms in the LHWCA, specifically, whether the worker was injured while performing a "traditional maritime function" and whether the situs of the injury was "upon the navigable waters of the United States." *See Wellsville Terminals Co. v. Workmen's Comp. Appeal Bd. (Zacharias),* 534 Pa.333, 632 A.2d 1305 (1993). For the reasons that follow, we find that appellee

was not injured "upon the navigable waters of the U.S." and therefore, we affirm the decision of the Commonwealth Court.

Appellee Daniel McElheney was employed as a pipe fitter welder by appellant Kvaerner Philadelphia Shipyard ("Employer"). On November 13, 2002, appellee suffered injuries to his shoulder and ankle when he tripped and fell on an electric wire while working on a ship in a "graven dry dock."[1] On February 26, 2003, employer issued a "Payment of Compensation without Award" and appellee received benefits under the LHWCA, which provides compensation to maritime workers for injuries occurring upon the "navigable waters of the United States." 33 U.S.C. § 903(a). Those payments ceased on June 11, 2004, when Employer's insurance carrier stopped payments after determining that appellee had sufficiently recovered and was able to return to work. Because he believed that his injuries continued to prevent him from returning to work, appellee then filed a petition seeking workers' compensation benefits under the PWCA.

At the hearing before a Worker's Compensation Judge ("WCJ"), appellee cited the U.S. Supreme Court's decision in *Sun Ship, Inc. v. Pennsylvania, et al.*, 447 U.S. 715, 100 S.Ct.

1. A "graven" or "graving" dry dock has been described as:

[A] fixed basin usually of stone masonry, concrete, or piling cells adjacent to the water's edge. It can be closed off from the waterway by a moveable watertight barrier.... It can there be pumped dry, allowing a ship to settle down on blocking set on the dock floor. Department of Defense, "Maintenance of Waterfront Facilities," (June 1978), at ¶ 1.4.2.5.1, *available at* http://www.usace.army.mil/publications/armytm/tm5-622/c-1.pdf; *see also*, Department of Defense, "Unified Facilities Criteria (UFC), Maintenance and Operation: Maintenance of Waterfront Facilities," (June 19, 2001), at ¶ 2–2.4, *available at* http://www.wbdg.org/ccb/DOD/UFC/ufc—4—150—07.pdf, (same). Justice Harold Burton's often cited description of the three different types of dry docks is as follows:

[T]here are three kinds of dry docks. (1) A floating dry dock, as its name makes clear, floats on the water, the vessel resting on the bottom of the dry dock after the water has been removed. (2) A graven dry dock is dug into the land. The vessel floats in but rests on land once the water has been pumped out. (3) Finally there is the marine railway, on which the vessel is drawn out of the water, instead of the water being drawn away from the vessel.

*Avondale Marine Ways, Inc. v. Henderson*, 346 U.S. 366, 367, 74 S.Ct. 100, 98 L.Ed. 77 (1953) (Burton, J., concurring).

2432, 65 L.Ed.2d 458 (1980) and argued that the LHWCA does not preempt state workers' compensation laws. Appellee claimed that there is concurrent state and federal jurisdiction when a worker's injury occurred on land while performing traditionally maritime functions. Employer countered, citing this Court's decision in *Wellsville* and claiming that the injury occurred over the "navigable waters of the United States," therefore precluding the application of Pennsylvania workers' compensation law. Ruling in favor of Employer, the WCJ found that appellee was performing a "traditional maritime function" over the "navigable waters of the United States" as defined under the LHWCA, and therefore, held LHWCA's jurisdiction to be exclusive. The WCJ found appellee's work not to be "land-based" and considered the circumstance indistinguishable from *Wellsville*, where this Court found exclusive LHWCA jurisdiction in a case where a welder was injured on a barge on the Ohio River that was tethered to shore. The Workers' Compensation Appeal Board ("WCAB") affirmed.

Upon appellee's appeal, the Commonwealth Court reversed in a published opinion, holding that concurrent state and federal recovery was available under the present circumstances. *McElheney v. Workers' Comp. Appeal Bd. (Kvaerner Philadelphia Shipyard)*, 908 A.2d 960 (Pa.Cmwlth.2006). The panel analyzed the relevant section of the LHWCA, as amended, which reads as follows, with the 1972 amendments/additions in bold:

.... [C]ompensation shall be payable under this chapter in respect of disability or death ... if the disability or death results from an injury occurring upon the navigable waters of the United States (including any **adjoining pier, wharf,** dry dock, **terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel**).

33 U.S.C. § 903(a) (emphasis added). Citing *Sun Ship*, the panel agreed with the U.S. Supreme Court's interpretation of Congress' intent that the 1972 amendments to the LHWCA supplemented, rather than supplanted, state workers' compen-

sation law, and held that there is concurrent jurisdiction over the "adjoining" land-based maritime sites included in the 1972 amendments. *McElheney*, 908 A.2d at 964–65. Referring to Justice Burton's *Avondale* Concurring Opinion describing different types of dry docks, the panel below acknowledged that recovery is barred under the PWCA when an injury occurs on a floating dry dock, pursuant to *Wellsville*. This was so because *Wellsville* held that concurrent jurisdiction existed only over land-based injuries to workers performing traditionally maritime functions where the injuries occurred within the landward extension of the LHWCA. The panel considered concurrent recovery available in the present case because appellee was injured on a ship that was not afloat, but "in a physical sense on land." *McElheney*, 908 A.2d at 965–66 (internal quotations omitted). We granted Employer's petition for allowance of appeal to consider the question of concurrent versus exclusive jurisdiction.

■ In workers' compensation appeals, this Court will affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence of record. *See Hannaberry v. Workmen's Comp. Appeal Bd. (Snyder, Jr.)*, 575 Pa.66, 834 A.2d 524, 527 (2003). Here, because appellee was undoubtedly engaged in a traditionally maritime function,[2] the precise issue before the Court is whether a graven dry dock is within the "navigable waters of the U.S." and thus within the exclusive purview of the LHWCA, or whether it is land-based and within the judicially recognized zone of concurrent state and federal workers' compensation jurisdiction.

On appeal, Employer claims that appellee's work was not land-based and that his injuries, which were suffered while on a dry-docked vessel, occurred over the "navigable waters of the United States." Employer claims that appellee's benefits are therefore limited to those provided under the LHWCA and that, pursuant to the reasoning of the WCJ, appellee is

2. This fact and conclusion are not disputed by the parties.

barred from recovering under the PWCA. Employer argues that the Commonwealth Court erred when it distinguished between a graven dry dock and a floating dry dock. Employer also posits that the Commonwealth Court incorrectly construed Justice Burton's *Avondale* concurrence describing different dry docks. Employer argues that the sentence following the one relied upon by the Commonwealth Court in support of its differential treatment of dry docks directly contradicts the court's conclusion:

> [a] ship is no more or less on land when it rests on a graven dry dock than when it rests on a marine railway. The three types of dry docks are not different in kind; functionally they are the same. And I see no basis for concluding that Congress treated one differently from the others for the purposes of [the LHWCA].

*See Avondale,* 346 U.S. at 367, 74 S.Ct. 100 (Burton, J., concurring).

Appellee, on the other hand, urges this Court to affirm the decision of the Commonwealth Court. Appellee argues that because his injuries occurred on land, they therefore fall within the "twilight zone" which allows a claimant to recover under both state and federal workers' compensation law. For the reasons that follow, we agree with the decision of the Commonwealth Court that, under the circumstances *sub judice,* recovery is available under both the LHWCA and the PWCA.

Prior to passage of the LHWCA, the U.S. Supreme Court drew a jurisdictional line at the water's edge, barring the application of state workers' compensation laws to maritime workers under the Admiralty Clause of the U.S. Constitution. *See Southern Pacific Co. v. Jensen,* 244 U.S. 205, 214–15, 218, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) (citing U.S. Const. art. III § 2).[3] The Court reasoned that this distinction was in the

---

**3.** The Admiralty Clause reads as follows:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; ... to all Cases of admiralty and maritime Jurisdiction....

national interest of promoting the uniformity of national maritime law. *Id.* at 216, 37 S.Ct. 524. A very short time later, however, the Court narrowed the application of *Jensen* and allowed maritime workers to recover under state workers' compensation law when their employment was "local" in character. *See Western Fuel Co. v. Garcia,* 257 U.S. 233, 242, 42 S.Ct. 89, 66 L.Ed. 210 (1921).[4]

In 1927, Congress, in an apparent effort to protect maritime workers excluded by *Jensen,* enacted the Longshoremen's and Harbor Workers' Compensation Act,[5] providing compensation for maritime workers injured on the navigable waters of the United States. The relevant text of the 1927 act is as follows:

> Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law.

33 U.S.C. § 903(a) (1927). Hence, recovery was available to workers injured upon the navigable waters of the U.S. who did

U.S. CONST art. III § 2.

4. Describing the uncertain definition of "maritime but local," the Court in *Calbeck v. Travelers Insurance Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), stated:

> No dependable definition of the area—described as "maritime but local," or "of local concern"—where state laws could apply ever emerged from the many cases which dealt with the matter in this and the lower courts. The surest that could be said was that any particular injury might be within the area of "local concern," depending upon its peculiar facts. In numerous situations state acts were considered inapplicable because they were thought to work material prejudice to the characteristic features of the general maritime law, particularly in cases of employees engaged in repair work. On the other hand, awards under state compensation acts were sustained in situations wherein the effect on uniformity was often difficult to distinguish from those found to be outside the purview of state laws. *Id.* at 119, 82 S.Ct. 1196 (footnote omitted).

5. The title of the Act was changed to the "Longshore and Harbor Workers' Compensation Act" in 1984. 33 U.S.C. § 901 *et seq., amended by* Pub.L. 98–426.

not otherwise have a remedy through state workers' compensation law.

There was, however, still confusion in the "maritime but local" context. Thus, in *Davis v. Department of Labor and Industries of Washington*, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), the U.S. Supreme Court alluded to a "twilight zone" where jurisdiction was difficult to determine, and acknowledged concurrent jurisdiction between state and federal workers' compensation law under certain circumstances. *See id.* at 256–58, 63 S.Ct. 225. As this Court noted, at that time, "[w]orkers who fit into the *Davis* 'twilight zone' would be entitled to a claim under either the LHWCA **or** the state workmen's compensation program." *Wellsville*, 632 A.2d at 1307.

In *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), the High Court widened the zone of concurrent jurisdiction further, concluding that Congress' use of the phrase "if recovery . . . may not validly be provided by State law" was meant to apply the LHWCA to all injuries occurring on navigable waters, without regard to the "maritime but local" concern. *Id.* at 126–127, 82 S.Ct. 1196.[6] The *Sun Ship* Court later noted, however, that in the period where the LHWCA did not cover injuries to traditional maritime workers that occurred while on land:

> Before 1972, then, marine-related injuries fell within one of three jurisdictional spheres as they moved landward. At the furthest extreme, *Jensen* commanded that nonlocal maritime injuries fall within LHWCA. Maritime but local injuries upon the navigable waters of the United States could be compensated under the LHWCA or under state law. And injuries suffered beyond navigable waters—albeit

6. In explaining why its conclusion was consistent with previous decisions, the Court in *Calbeck*, for example, discussed *Avondale, supra,* and noted that the claimant's injury, which occurred on a marine railway, occurred "upon navigable waters" and was therefore within the LHWCA. The Court noted that, "[a]t the same time, since the injury did, in a physical sense occur on land, there is little doubt that a state compensation act could validly have been applied to it." *Calbeck,* 370 U.S. at 129, 82 S.Ct. 1196.

within the range of federal admiralty jurisdiction—where remediable only under state law.

*Sun Ship*, 447 U.S. at 719, 100 S.Ct. 2432 (internal quotations and citations omitted).

With the 1972 amendments, Congress expressly extended the LHWCA's jurisdictional reach landward, by including the following land-based sites along with dry docks,[7] as within the applicable scope of "the navigable waters of the United States": "any adjoining pier, wharf, ... terminal, building. way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." *See* 33 U.S.C. § 903(a).

The U.S. Supreme Court first interpreted the significance of the "land-based" amendments in *Sun Ship* when it was asked to decide whether a state's workers' compensation law could apply to land-based injuries falling within the coverage of the amended LHWCA. 447 U.S. at 716, 100 S.Ct. 2432.[8] Answering in the affirmative, the Court concluded that the amendment "supplements, rather than supplants state compensation law[,]" and found concurrent jurisdiction over the amendments' land-based sites, further expanding the zone of concurrent jurisdiction. *Id.* at 716, 720, 100 S.Ct. 2432. Writing for the majority, Justice William Brennan considered the 1972 amendments to the LHWCA to be remedial in nature and concluded that Congress extended federal jurisdiction landward, as "a source of relief for injuries which had always been viewed as the province of state compensation law." *Id.* at 719, 725–26, 100 S.Ct. 2432.

On the practical implications of concurrent jurisdiction, the Court in *Sun Ship* found that workers who initially filed claims under state law could make up the difference between the state remedy and the federal minimum standard by seeking relief under the LHWCA. *Id.* at 724, 100 S.Ct. 2432.

---

7. "Dry dock" was included in the original language of the statute. *See* 33 U.S.C. § 903(a) (1927).

8. Like appellee, the injured workers in *Sun Ship* were injured while building or repairing ships on the Pennsylvania side of the Delaware River. 447 U.S. at 716, 100 S.Ct. 2432.

Additionally, the Court recognized that concurrent jurisdiction could result in more favorable awards if state remedies were more generous than federal. The Court, however, did not believe that "Congress was concerned about a disparity between adequate federal benefits and **superior** state benefits." *Id.* The Court thus reaffirmed the *Davis* Court's rejection of the notion of exclusivity of jurisdiction under the LHWCA. *Id.* at 724–25, 100 S.Ct. 2432.[9]

This Court considered the application of the 1972 amendments and the *Sun Ship* decision in *Wellsville*. *Wellsville* involved a welder who was injured while repairing a barge on the Ohio River that was tethered to land. 632 A.2d at 1306.

9. Addressing the possible conflict within a concurrent jurisdiction scheme, and consistent with its remedial interpretation of the amended LHWCA, the Court in *Sun Ship* noted:

> [FN6] Most often, state workmen's compensation laws will not be treated as making awards thereunder final or conclusive. Admittedly, if a particular state compensation law provision does indisputably declare its awards final, a conflict with the LHWCA may possibly arise where a claimant seeks inferior state benefits in the first instance. But the consequences to the claimant of this error would be less drastic than those of a mistake under the rule appellant contemplates—under which a misstep could result in no benefits. At any rate, although the question is not directly before us, we observe that if federal preclusion ever need be implied to cope with this remote contingency, a less disruptive approach would be to pre-empt the state compensation exclusivity clause, rather than to pre-empt the entire state compensation statute as appellant suggests.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Finally, we are not persuaded that the bare fact that the federal and state compensation systems are different gives rise to a conflict that, from the employer's standpoint, necessitates exclusively for each compensation system within a separate sphere. Mandating exclusive jurisdiction will not relieve employers of their distinct obligations under state and federal compensation law. The line that circumscribes the jurisdictional compass of the LHWCA—a compound of "status" and "situs"—is no less vague than its counterpart in the pre-"twilight zone" *Jensen* era. Thus, even were the LHWCA exclusive within its field, many employers would be compelled to abide by state-imposed responsibilities lest a claim fall beyond the scope of the LHWCA. Our observation about exclusive jurisdiction in *Davis v. Department of Labor*, is apt whether jurisdictional barriers are erected on land or at the water's edge: "The horns of the jurisdictional dilemma press as sharply on employers as on employees." 317 U.S. at 255, 63 S.Ct. at 228.

*Sun Ship*, 447 U.S. at 724 n. 6, 725, 100 S.Ct. 2432 (internal citations omitted).

Although significantly narrowed over the years, this Court found that *Jensen* had not been affected by *Sun Ship*, and thus, it still constitutionally bars maritime employees who are injured over navigable waters while performing traditionally maritime functions from recovering under state workers' compensation law. *Id.* at 1307. Interpreting *Sun Ship*, the *Wellsville* Court considered concurrent jurisdiction to exist "over injuries that fall within the coverage of the LHWCA which had been slightly extended **onto land** as a result of the 1972 Congressional amendments." *Id.* at 1307. The Court found the fact that the barge was held in position by a cable attached to land was too tenuous a connection to make it land-based and within the concurrent purview of state law. *Id.* at 1308. We therefore concluded that recovery under the LHWCA was exclusive and that the Commonwealth Court had erred in applying "the *Davis* and *Sun Ship* 'twilight zone' exceptions to the *Jensen* doctrine" premised upon its finding that the claimant's work was "sufficiently land-based." *Id.* at 1307, 1309.

In reaching its conclusion, the *Wellsville* Court relied on the decision of the Fifth Circuit Court of Appeals in *Flowers v. Travelers Insurance Co.*, 258 F.2d 220 (5th Cir.1958). *Flowers* held that exclusive LHWCA jurisdiction existed where a welder was injured on a floating dry dock in a shipyard in Galveston Harbor. *Wellsville*, 632 A.2d at 1308 (citing *Flowers*, 258 F.2d at 221, 228). The Fifth Circuit found that the LHWCA provided the exclusive remedy and that the "twilight zone" exception did not apply because, although the injured worker had some land-based duties, his injury occurred over navigable waters while repairing a ship, a traditional maritime activity. *Id.* at 1308–09 (discussing *Flowers*, 258 F.2d 220). (*Flowers*, of course, was decided prior to the enactment of the 1972 Amendments.)

Turning to the case at bar, as a pipe fitter welder working aboard a dry-docked vessel, appellee was clearly performing a traditionally maritime function. *See Wellsville*, 632 A.2d at 1308 ("ship repair is clearly a traditional maritime activity"). Thus, the situs of the work injury is the central

60

issue before the Court. More precisely, we must determine within which category graven dry docks fall—are they within the "navigable waters of the United States" and thus within the exclusive jurisdiction of the LHWCA, or are they land-based and covered concurrently by state and federal law?

 We hold that a graven dry dock is a land-based site within the scope of the 1972 land-based amendments to the LHWCA. Though "dry dock" was included in the original language of the LHWCA, it is undoubtedly within the scope of *Sun Ship's* application of the statute as amended, *i.e.*, as an "area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." *See* 33 U.S.C. § 903(a). A graven dry dock, by definition, is cut and dug **out of the land.** This is sufficient to make it "land-based." The periodic and artificial flooding of the graven dry dock with water is insufficient to divorce the site from land and render it exclusively within the limits of the "navigable waters of the U.S." If a wharf and a pier, which extend out over the water, are within *Sun Ship's* zone of concurrent jurisdiction, then so too should an area of land that is carved out of the terrain and periodically and deliberately flooded.[10] Furthermore, a contrary holding would allow for concurrent jurisdiction over injuries occurring during the construction of a graven dry dock, but would prohibit concurrent recovery to workers injured on the same site once the dry dock is complete.[11] Finally, this holding is in keeping with what the U.S. Supreme Court described as Congress' remedial intent behind the 1972 amendments. Therefore, we hold that the LHWCA and the

10. We also find it significant that all these areas are included in the same descriptive parenthetical in the Act. 33 U.S.C. § 903(a) (". . . the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel")).

11. Dry dock construction is certainly not over "the navigable waters of the U.S.," so it is not excluded from state jurisdiction, and at least one other court has found injuries to workers constructing a dry dock to be within the purview of the LHWCA. *See, e.g., Brown & Root, Inc. v. Joyner*, 607 F.2d 1087, 1090 (4th Cir.1979).

PWCA share concurrent jurisdiction over graven dry docks.[12]

Furthermore, we agree with the Commonwealth Court's distinction of *Wellsville*, where the barge the welder was injured on was floating on a river, and "its only 'nexus' to land was a cable holding the barge in position." *Wellsville*, 632 A.2d at 1308. Unlike the Commonwealth Court, however, we do not find the fact that the vessel in this case was resting "on land" at the time of injury to be dispositive. A graven dry dock is land-based regardless of how much water has been flooded into it when a vessel enters or exits, and an injury occurs. The reason for this conclusion is also practical; to accept the analysis of the Commonwealth Court would cause concurrent jurisdiction to ebb and flow with the rising and receding waters within the graven dry dock—concurrent when the ship is resting on the floor of the dry dock, but exclusive when the vessel is afloat within the confines of the dry dock. Additionally, where the injury occurs within the dry dock is insignificant. There is concurrent LHWCA and PWCA jurisdiction whether the injury occurred on the dry-docked vessel or on the dry dock apparatus itself.

For the foregoing reasons, we hold that a graven dry dock is a land-based site within the jurisdiction of both the federal Longshore and Harbor Workers' Compensation Act and the Pennsylvania Workers' Compensation Act. The decision of the Commonwealth Court is hereby affirmed.

Former Chief Justice CAPPY and former Justices BALDWIN and FITZGERALD did not participate in the decision of this case.

Justices SAYLOR, EAKIN and BAER join the opinion.

12. We emphasize that this analysis does not necessarily extend to floating dry docks. Justice Burton's belief that all dry docks be treated similarly would appear to be administratively convenient. However, due to the unfixed nature of floating dry docks, *Wellsville* could easily be applicable, which would bar concurrent recovery for injuries occurring on floating dry docks. Nonetheless, that issue is not before the Court and we do not reach it.