A95A2379. ALLSOUTH STEVEDORING COMPANY et al.
v. WILSON.
A95A2541. STRACHAN SHIPPING COMPANY et al. v. WILSON.
(469 SE2d 348)

SMITH, Judge.

AllSouth Stevedoring Company (AllSouth) and Strachan Shipping Company (Strachan) and their respective workers' compensation insurance carriers, Travelers Insurance Company and Legion Insurance Company, filed two separate applications for discretionary ap-

peal from the decision of the superior court affirming an award of workers' compensation to James Wilson. We granted those applications, and these appeals ensued.

The claimant, James Wilson, was employed as a stevedore superintendent for AllSouth. In that capacity, he supervised and instructed longshoremen in loading and unloading ships and sometimes performed the work of stevedores; his duties were carried out both aboard ships and on the docks. He was first injured in April 1991 when he slipped and fell aboard a ship moored at a pier on the Savannah River. Wilson applied for and received compensation under the Longshoremen's & Harbor Workers' Compensation Act (LHWCA), 33 USC § 901 et seq., from July 1991 until September 1991. After undergoing a diskectomy in July 1991, he returned to work in September 1991. The surgery resolved Wilson's leg pain, but some residual back pain continued, and after the surgery he began experiencing muscle spasms or cramps in his leg.

Although Wilson was an AllSouth employee when he was injured in 1991, the agreement under which AllSouth and Strachan merged ended while Wilson was out of work. As a result, when he returned to his job, he did so as an employee of Strachan. In January 1993, in the course of his employment with Strachan, Wilson was on a ladder in the hold of a ship when he experienced a severe spasm in his leg. The leg "cramped," and Wilson was unable to move either up or down the ladder. He left work at that time, and he has not worked in that capacity since.

He once again applied for benefits under the LHWCA. He also applied for benefits under the Georgia Workers' Compensation Act, claiming that his current disability constituted a change in his original condition. AllSouth, his original employer, controverted the claim for state benefits, both on the ground that exclusive jurisdiction over the claim existed under the LHWCA and on the ground that the January 1993 injury was a new injury for which Strachan was responsible. Because of the latter claim by AllSouth, Strachan was brought into the action. Strachan concurred with AllSouth on the jurisdictional issue, but agreed with Wilson that his 1993 claim constituted a change in condition.

The administrative law judge ruled in favor of Wilson on both grounds and against AllSouth on the issue of change of condition. The appellate division affirmed, as did the superior court. We granted AllSouth's and Strachan's applications for discretionary review to resolve an issue that no Georgia case has addressed: whether concurrent jurisdiction exists under the LHWCA and the Georgia Workers' Compensation Act, OCGA § 34-9-1 et seq., for injuries sustained by a stevedore on navigable waters within this state. We have consolidated the appeals for review in this opinion.

1. We first address the issue of jurisdiction. To better understand the background of the dispute in this case, a brief history is helpful. In 1917, the United States Supreme Court's ruling in *Southern Pacific Co. v. Jensen*, 244 U. S. 205 (37 SC 524, 61 LE 1086) (1917), created a line at the water's edge beyond which states were barred by the admiralty clause of the United States Constitution from applying their workers' compensation schemes to maritime workers. In the interest of promoting uniformity in the national maritime law, all injuries to maritime workers occurring seaward of the water's edge were required to be addressed only under federal law. Although *Jensen* has been criticized severely, it has never been overruled. It has, however, been narrowed considerably.

Seeking to avoid the harsh result imposed under *Jensen* and to render some injured maritime employees eligible for state workers' compensation benefits, the Supreme Court held in *Western Fuel v. Garcia*, 257 U. S. 233 (42 SC 89, 66 LE 210) (1921), that it was constitutionally permissible to apply state law to such employees even where the employment in issue was "maritime" if the employment was "local" in character. In such cases, it was reasoned, application of state law would not imperil the uniformity of the national maritime law. Id. at 242. In fact, in *Grant Smith-Porter Ship Co. v. Rohde*, 257 U. S. 469 (42 SC 157, 66 LE 321) (1922), the Supreme Court held, relying on *Garcia*, that a proceeding in admiralty would not lie to recover damages for an injury on Oregon's navigable waters to the employee of a shipbuilding company; the employee was restricted to a remedy under Oregon's workers' compensation law. *Rohde,* supra at 477. If employment could not be described as "maritime but local," however, no compensation remedy was available.

In 1927, after the Supreme Court had declared two prior legislative attempts unconstitutional, Congress succeeded in enacting the LHWCA. The primary purpose of the Act was to bring under a federal compensation scheme workers barred by *Jensen* from state workers' compensation coverage. The Act provided compensation coverage to maritime workers injured on navigable waters "if recovery . . . through workmen's compensation proceedings may not validly be provided by State law." 33 USC § 903 (a). Passage of the LHWCA did not serve, however, to erase confusion. Decisions interpreting when employment was "maritime but local" were far from uniform and less than clear. Moreover, because the LHWCA and state compensation schemes were mutually exclusive, injured maritime workers were forced to make costly guesses regarding whether federal law or state law provided a remedy for their injuries. If the wrong remedy was pursued, the other, "right" remedy might well be barred by the running of the statute of limitation.

In 1942, the Supreme Court acknowledged that the border be-

tween the mutually exclusive federal and state compensation schemes was not, in fact, a line, as was held in *Jensen,* but rather was a "twilight zone in which the employees must have their rights determined case by case." *Davis v. Dept. of Labor,* 317 U. S. 249, 256 (63 SC 225, 87 LE 246) (1942). Not until the decision in *Calbeck v. Travelers Ins. Co.,* 370 U. S. 114 (82 SC 1196, 8 LE2d 368) (1962), however, did the Supreme Court hold that the LHWCA was applicable to *all* injuries on navigable waters, regardless of whether they were "maritime but local" and irrespective of whether state compensation schemes could also constitutionally apply. Id. at 126-127. *Calbeck* thus established an area in which federal and state jurisdiction overlapped.

It was clear, though, that the LHWCA did not cover injuries when they happened to occur on land, even to workers in such traditional maritime occupations such as longshoremen. Jurisdictionally speaking, prior to 1972, three categories of maritime-related injuries existed. One category, falling strictly under *Jensen,* consisted of injuries on navigable waters to maritime employees whose employment was not "local" in nature. These injuries were covered exclusively under the LHWCA. The second category, "maritime but local" injuries on navigable waters, could be compensated either under the LHWCA or under a state scheme.[1] In the third category were injuries to maritime workers that occurred on land, even if they occurred within the usual range of federal admiralty jurisdiction. These injuries fell under the exclusive jurisdiction of state workers' compensation schemes.

In 1972, Congress amended the LHWCA to extend its coverage landward in just such cases. In 1980, the Supreme Court held that the extension of federal jurisdiction under these amendments "supplements, rather than supplants, state compensation law." *Sun Ship v. Commonwealth of Pa.,* 447 U. S. 715, 720 (100 SC 2432, 65 LE2d 458) (1980). In *Sun Ship,* the court held that concurrent federal and state jurisdiction exists under the 1972 amendments for land-based injuries sustained by a shipyard worker at the yard, located on land along the Delaware River. *Sun Ship* is the latest relevant pronouncement of the United States Supreme Court with regard to the issue of jurisdiction.

Bearing in mind this history, we turn to the jurisdictional issue presented by this case. Federal cases have been primarily concerned with the extension of federal jurisdiction. That is not at issue here; under *Calbeck,* supra, 370 U. S. at 126-127, Wilson's injury clearly is compensable under the LHWCA because it occurred on navigable waters, regardless of whether it is also of local concern and therefore also

---

[1] No possibility exists for double recovery, because benefits under either scheme are credited against each other.

compensable under Georgia workers' compensation law. The issue here is extending state jurisdiction to an injury over which federal jurisdiction has already been established. We must decide whether either federal or Georgia law precludes coverage for this injury under the Georgia workers' compensation law.

AllSouth and Strachan correctly point out that *Sun Ship* held only that federal jurisdiction now exists under the 1972 amendments to the LHWCA for *land*-based injuries that are also covered under state law. The 1972 amendments and *Sun Ship* removed the third pre-1972 exclusive jurisdiction category, composed of those injuries exclusively within the jurisdiction of state law because they occur on land, rather than on navigable waters. Concurrent jurisdiction now exists for that category of injury. AllSouth and Strachan argue, however, that the first jurisdictional category was unaffected by either the 1972 amendments or *Sun Ship* and that this category is still governed by *Jensen*. They argue further that Wilson's injury must fall in that first, *Jensen*-governed category, because Wilson was engaged in stevedoring, an occupation that is traditionally and strictly maritime, rather than "maritime but local." We do not agree.

The superior court correctly noted that a split of authority exists among jurisdictions that have dealt with this issue. That split results from differing interpretations of the meaning of the phrase "maritime but local," a zone in which the United States Supreme Court has held that concurrent jurisdiction exists. Compare, e.g., *Norfolk Shipbuilding & Drydock Corp. v. Duke,* 420 SE2d 528 (Va. App. 1992), with *Wellsville Terminals Co. v. Workmen's Compensation Appeal Bd.,* 632 A2d 1305 (Pa. 1993). In *Duke,* an employee was injured on navigable waters in the course of his employment with a shipbuilder; the work was a maritime activity and the injury occurred on navigable waters. The employment was held to be "maritime but local" because both the injured employee and the corporate employer were Virginia citizens, the work was performed in Virginia waters and resulted from a local employment contract, and the employer/employee relationship was a proper subject of state interest and control. In *Wellsville Terminals Co.,* a welder was injured on navigable waters in the course of his employment with a company that repaired barges floating on a river. His work was held *not* to be "maritime but local" because it was traditional maritime work.

Both lines of authority have merit, but as the superior court noted, both are premised upon the individual state's compensation laws. No Georgia case is on point.[2] Absent controlling Georgia author-

---

[2] *Atlantic Container Svcs. v. Godbee,* infra, noted by the superior court as factually distinguishable, was at that time pending in this Court.

ity, the decision regarding whether concurrent jurisdiction exists must be based upon policy considerations. We find the policy considerations favoring concurrent jurisdiction most persuasive, and we therefore affirm.

In addition to the policy relied upon by the trial court of liberally construing the Georgia Workers' Compensation Act in order to bring employers and employees within its coverage, we have considered as well the type of employment covered in this case. This court has recently decided, in *Atlantic Container Svcs. v. Godbee*, 218 Ga. App. 594 (462 SE2d 465) (1995), that concurrent jurisdiction exists for land-based injuries, and that a state compensation remedy may be sought despite the claimant's previous receipt of benefits under the LHWCA for such injuries. *Godbee* is factually distinguishable from this case because the injury in that case occurred on land. Even so, it is clear that under *Godbee*, Georgia compensation law covers a stevedore injured on shore, notwithstanding previous receipt of compensation under the LHWCA.

In light of *Godbee*, AllSouth's and Strachan's argument that the LHWCA is the *exclusive* remedy for a stevedore such as Wilson who is injured while aboard a ship on navigable waters leads to an anomalous result. Were we to hold that exclusive jurisdiction over such injuries exists under the LHWCA, two stevedores employed by the same company, loading or unloading the same ship's cargo, and suffering identical injuries would be treated differently if the injury of one occurred on the dock and the other occurred in the ship's hold. This distinction is indefensible; in the performance of a stevedore's work, he would literally walk in and out of state compensation coverage many times each day. Employers must purchase state workers' compensation coverage for their stevedore employees because the possibility exists that such employees will be injured on land. Covering those same employees for identical injuries aboard ships will place no new burdens on employers.

We find additional support for finding concurrent jurisdiction in the 1972 amendments themselves. Significantly, these amendments, in addition to extending LHWCA coverage to certain land-based injuries to maritime workers, also removed the language in § 903 (a) providing that the LHWCA would apply if recovery could not validly be provided under state workers' compensation acts.[3] The *Sun Ship*

---

[3] The 1972 amendments also changed the definition of "employee" by adding a "status" requirement not present before ("any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net"). 33 USC § 902 (3). This change, however, is not germane to our analysis.

court, while conceding that the state law clause removed in the 1972 amendments was subject to opposing interpretations, noted that under *either* interpretation, its deletion in the 1972 amendments "if it indicates anything — may logically only imply acquiescence in *Calbeck's* conclusion that the LHWCA operates within the same ambit as state workers' remedies." (Footnote omitted.) *Sun Ship,* supra, 447 U. S. at 721. For these reasons, we affirm the superior court's ruling that concurrent jurisdiction exists and that Wilson is not precluded from obtaining state benefits.

2. AllSouth also contends the decision below is erroneous in that Wilson's "injury" in 1993 is not a change in condition but a new injury, for which Strachan is responsible. We find no merit in this contention.

The duties performed by Wilson when he returned to work in September 1991 as a Strachan employee were exactly the same as those he performed for AllSouth before his injury. After the 1991 injury, he began having muscle spasms, or cramps, in his leg and back pain. The pain and spasms occurred at home, as well as at work. They have gradually worsened. They occur closer together, last longer, and encompass a greater body area. He had no other traumatic incident or injury that caused him to stop work. Although we can agree with AllSouth that a specific, discernible spasm occurred on the ladder, it was not caused by an accident or other trauma; it occurred while Wilson was performing his regular duties, and it was no different from other spasms he had continued to endure since his original injury. The incident simply convinced Wilson he could no longer work as a stevedore superintendent.

This was not a new accident. "The proper classification of the basis of a claim as an accident, change of condition, or new accident hinges generally upon two factors: (1) Whether the claim seeks initial or additional compensation for the injury; and, (2) the proximate cause of the injury for which compensation is being sought. . . . A change in condition claim for additional compensation is predicated upon the claimant's gradually worsening condition, from the wear and tear of performing his usual employment duties and of ordinary life, to the point that he can no longer continue to perform his ordinary work." (Citations and punctuation omitted.) *Holt's Bakery v. Hutchinson,* 177 Ga. App. 154, 157 (338 SE2d 742) (1985). Evidence exists to bring Wilson's injury within the classic definition of a change in condition. A finding of change in condition is unaffected by the fact that Wilson changed employers, because his job duties and working conditions were the same. *Slattery Assocs. v. Hufstetler,* 161 Ga. App. 389 (288 SE2d 654) (1982). The superior court did not err in affirming the award to Wilson based upon a change in condition.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

212

*Karsman, Brooks & Callaway, Shari S. Miltiades*, for appellants (case no. A95A2379).

*Barrow, Sims, Morrow & Lee, Charles Barrow*, for appellants (case no. A95A2541).

*Bouhan, Williams & Levy, Edwin D. Robb, Jr.*, for appellee.