Daniel McELHENEY, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (KVAERNER PHILA-
DELPHIA SHIPYARD), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 18, 2006.

Decided Sept. 27, 2006.

Brian R. Steiner, Philadelphia, for peti-
tioner.

Paul C. Cipriano, Jr., Philadelphia, for
respondent.

BEFORE: PELLEGRINI, Judge,
FRIEDMAN, Judge, and McCLOSKEY,
Senior Judge.

OPINION BY Judge PELLEGRINI.

The single question presented by this
appeal is whether the Pennsylvania Work-
ers' Compensation Act (Act) [1] applies to an
injury incurred by a claimant working on a
ship in dry dock even though that injury
also falls within the coverage of the Long-
shore and Harbor Workers' Compensation
Act (LHWCA), 33 U.S.C. 901–950 (2000).

Daniel McElheney (Claimant) worked at
the Philadelphia Navy Yard employed by
Kvaerner Philadelphia Ship Yard (Em-
ployer) as a pipe fitter welder. While
working on a ship in dry dock, Claimant
tripped and fell, injuring his right knee,

---

1. Act of June 2, 1915, P.L. 736, *as amended,*   77 P.S. §§ 1–1041.4; 2501–2626.

right shoulder and right foot. Claimant was initially paid benefits under the LHWCA from February 1, 2003, until June 11, 2004,[2] when those benefits ended.[3]

■ Because his work-related injuries which were previously compensated under the LHWCA purportedly still prevented him from returning to work, Claimant filed a Claim Petition seeking Pennsylvania workers' compensation. Employer denied all of the allegations and also contested whether Pennsylvania workers' compensation benefits were even available because his injury occurred while repairing a ship in dry dock making the LHWCA his sole source of benefits. Because it was a threshold issue, the parties agreed that the Workers' Compensation Judge (WCJ) would decide whether Claimant was entitled to compensation under the Pennsylvania Workers' Compensation Act. In Pennsylvania, whether a maritime worker, who is not a seaman, has access to the state workers' compensation system is determined by whether a claimant's job duties are sufficiently land-based or those job duties are not primarily maritime in nature. (See discussion, infra).

■ Before the WCJ, Claimant contended that his job was land-based because the ship was not on navigable waters as it was not afloat, but in dry dock when the injury occurred, entitling him to access to the Pennsylvania workers' compensation system. Employer argued that Claimant's work was not land-based because working on a ship in dry dock was a traditional maritime activity occurring on "navigable waters," making the LHWCA the exclusive remedy for his work-related injuries. Agreeing with Employer's reasoning and relying on our Supreme Court's decision in *Wellsville Terminals Company v. Workmen's Compensation Appeal Board (Zacharias)*, 534 Pa. 333, 632 A.2d 1305 (1993), the WCJ found that Claimant's exclusive remedy was under the LHWCA because he was working on a ship in dry dock which was a traditional maritime activity precluding access to Pennsylvania workers' compensation benefits. Claimant appealed to the Board, which affirmed, and this appeal followed.[4]

2. The parties submitted the following documentation as joint exhibits which were relevant to the Claimant's receipt of benefits under the LHWCA: U.S. Department of Labor Payment of Compensation Without Award Form (2/26/03); Notice of Controversion of Right to Compensation Form (3/17/03); Notice of Final Payment or Suspension of Compensation Payment Form (1/28/04); Notice of Conversion of Right to Compensation Form (1/28/04); Notice of Final Payment or Suspension of Compensation Payments (6/11/04); November 29, 2004 letter from Ms. Earline Wiseman (Wiseman), Claims Examiner, U.S. Department of Labor addressed to Claimant; and December 7, 2004 reply letter from Claimant's counsel addressed to the U.S. Department of Labor.

3. The November 29, 2004 letter from U.S. Department of Labor Claims Examiner Wiseman stated that Claimant's LHWCA benefits were stopped by Employer's insurance carrier because: "You sustained a permanent partial disability equivalent to 20% of the right foot, have reached maximum medical improvement and have the ability to return to work." In response, Claimant's counsel sent the December 7, 2004 letter disagreeing with Wiseman's partial disability of 20% of the right foot. The letter also noted that Claimant had suffered knee and shoulder injuries, which had prevented him from returning to his pre-injury employment and that was the reason why he filed a Pennsylvania workers' compensation claim.

4. Our scope of review of the Board's order is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth.1995).

Relying on the United States Supreme Court's decision *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), Claimant argues that he is entitled to benefits under both the Act and the LHWCA where his injuries were land-based. While he was working on a ship, he contends that it was land-based because it was sitting in dry dock and not afloat or over water. Employer contends that under *Wellsville*, our Supreme Court determined that Claimant's work was not land-based and his work was a traditional maritime activity making the LHWCA his sole remedy. To better understand those cases, a brief history of the LHWCA and when it preempts state workers' compensation laws is necessary.

In 1917, at a time where there was no federal legislation providing for compensation of injured workers, the United States Supreme in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), created a line at the water's edge beyond which states were barred by the admiralty clause of the United States Constitution from applying their workers' compensation schemes to maritime workers. It reasoned that in the national interest of promoting uniformity in the national maritime law, all injuries to maritime workers occurring seaward of the water's edge were required to be addressed only under federal law. Although *Jensen* has never been explicitly overruled, its holding over the years has been narrowed considerably.

One of those cases that narrowed *Jensen* and allowed injured maritime employ-ees to be eligible for state workers' compensation benefits was *Western Fuel Co. v. Garcia*, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). In that case, the United States Supreme Court held that it was constitutionally permissible to apply state workers' compensation laws to employees even where the employment in issue was "maritime" if the employment was "local" in character. In such cases, it was reasoned that application of state law would not imperil the uniformity of the national maritime law. *Western Fuel Co.*, 257 U.S. at 242, 42 S.Ct. 89; *see also Grant Smith–Porter Ship Co. v. Rohde*, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922) (holding that a proceeding in admiralty would not lie to recover damages for an injury on Oregon's navigable waters because the employee was restricted to a remedy under Oregon's workers' compensation law). If employment could not be described as "maritime but local," however, no compensation was available to injured maritime workers under the state compensation systems.

Congress twice attempted to deal with this decision by legislation expressly allowing state compensation programs to apply to maritime activities, but the Court struck down both statutes as unconstitutional interferences with the harmony and uniformity of maritime law. *See Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920); *see also Washington v. W.C. Dawson & Co.*, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924). Congress then enacted the LHWCA in 1927,[5] extending some level of protection

---

**5.** The 1927 version of Section 3(a) of the LHWCA reads as follows:

.(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

(1) A master or member of a crew of any vessel, nor any person engaged by the mas-

to maritime workers by providing compensation for injuries occurring upon the navigable waters of the United States. The LHWCA provided compensation coverage to maritime workers injured on navigable waters "if recovery ... through workmen's compensation proceedings may not validly be provided by State law." 33 U.S.C. § 903(a) (1927). Passage of the LHWCA did not serve, however, to erase confusion whether the employment was "maritime but local" that determined whether the federal law applied or claimants had to seek access to the state workers' compensation system.

In 1942, in *Davis v. Department of Labor and Industries of Washington,* 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942), the United States Supreme Court examined whether a state workers' compensation program applied to workers who were injured in navigable waters, but who were performing duties that were not traditionally maritime. In that case, a structural steelworker drowned in a river while dismantling an abandoned drawbridge. The deceased's duty was to examine the steel after it was lowered to a barge, and, when necessary, to cut the pieces to proper lengths. The deceased had helped to cut some steel from the bridge, and at the time of the accident, was working on the barge that was being loaded with the steel. If his employment were deemed "maritime but local" his remedy would have been through the state workers' compensation program and remedies would not have been available under the LHWCA. His dependents sought compensation under the state workers' compensation act and the Supreme Court in Davis held that it would apply. As explained in *Calbeck v.*

*Travelers Insurance Co.,* 370 U.S. 114, 128, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), Davis, "was not predicated on the ground that the employment was 'maritime but local,' and so outside the coverage of the Longshoremen's Act. Rather the Court viewed the case as in a 'twilight zone' where the applicability of state law was 'extremely difficult' to determine, and resolved the doubt, of course, in favor of the constitutionality of the application of state law. At the same time, the Court indicated that compensation might also have been sought under the Longshoremen's Act and that an award under that Act in the very same circumstances would have been supportable ... " After Davis there was a "twilight zone" in which there was concurrent jurisdiction between the state workers' compensation system and the LHWCA. With its decision in *Calbeck* however, the Supreme Court removed that "twilight zone" when it held that the LHWCA was applicable to *all* injuries on navigable waters, regardless of whether they were "maritime but local" and irrespective of whether state compensation schemes could also constitutionally apply. *Id.* at 126–127, 82 S.Ct. 1196. *Calbeck* established that the LHWCA would apply to all injuries on navigable waters and that a state workers' compensation system would also apply if the job was "maritime but local." *Id.* at 126, 82 S.Ct. 1196. It was clear, though, that the LHWCA did not cover injuries when they happened to occur on land, even to workers in such traditional maritime occupations such as longshoremen.

Before 1972 then, a worker who sustained a maritime-related injury would be entitled to seek compensation from the following sources: If the injury occurred

ter to load or unload or repair any small vessel under eighteen tons net; or
(2) An officer or employee of the United States or any agency thereof or of any State

or foreign government, or of any political subdivision thereof.

on navigable waters and the employment was not "local" in nature, *Jensen* controlled and the LHWCA was the exclusive source of compensation. "Maritime but local" injuries "upon the navigable waters of the United States," 33 U.S.C. 903(a) (1970), could be compensated under both the LHWCA and state workers' compensation. Davis. Injuries suffered beyond navigable *waters-albeit* within the range of federal admiralty jurisdiction were remediable only under state law. *Nacirema Operating Co. v. Johnson*, 396 U.S. 212, 220–221, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969).

In 1972, Congress amended the LHWCA to extend the list of activities eligible for compensation under the LHWCA to include those activities that were land-based, but at the "waters edge."[6] *Sun Shipbuilding and Dry Dock Co. v. Workmen's Compensation Appeal Board,* 41 Pa.Cmwlth. 302, 398 A.2d 1111, 1114 (1979). Addressing the 1972 Amendments, the United States Supreme Court, in *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 720, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), the case relied on by Claimant, held that only federal jurisdiction was extended by the 1972 amendments to the LHWCA to *land*-based maritime injuries that are also covered under state workers' compensation systems. Because the 1972 amendments supplemented, rather than supplanted, state workers' compensation law, concurrent federal and state jurisdiction exists for land-based injuries sustained by shipyard

workers. The Supreme Court reasoned that this was consistent with the thrust of the 1972 amendments to "upgrade the benefits" for maritime workers and that concurrent jurisdiction for state and federal compensation laws was in no way inconsistent with this policy. *Id.* at 723–724, 100 S.Ct. 2432. Because the 1972 amendments supplemented not supplanted state workers' compensation schemes, to obtain state worker's compensation benefits, it was not necessary for land-based maritime employees to establish that the work was "maritime but local," but only that they were injured.

In summary, after the 1972 amendments and *Sun Ship,* a maritime worker could seek compensation for injuries as follows:

· Injuries on navigable waters to maritime employees whose employment was not "local" in nature are covered exclusively under the LHWCA.

· "Maritime but local" injuries on navigable waters, could be compensated either under the LHWCA or through the state workers' compensation system.[7]

· Injuries to maritime workers occurring on land could be compensated either under the LHWCA or through the state workers' compensation system.

With regard to whether an injury on navigable waters was "maritime but local," thereby giving workers access to the state workers' compensation system, Pennsylvania and some other states[8] focused on the

**6.** The 1972 version of Section 3(a) of the LHWCA stated as follows:

> Compensation shall be payable under this chapter in respect of disability or death … if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in

loading, unloading, repairing, dismantling, or building a vessel).

**7.** There is no possibility of double recovery because benefits under either scheme were credited against each other.

**8.** *See Wells v. Industrial Commission,* 277 Ill. App.3d 379, 214 Ill.Dec. 38, 660 N.E.2d 229 (1995); *see also Indiana & Michigan Electric Co. v. Workers' Compensation Commissioner,* 184 W.Va. 673, 403 S.E.2d 416 (1991).

nature of the work in making that determination.[9] If the work was traditional maritime work and was not land-based, state workers' compensation benefits were not available. In *Wellsville, supra,* a welder was injured on navigable waters in the course of his employment with a company that repaired barges floating on a river. His work was held *not* to be "maritime but local" because it was traditional maritime work. The Pennsylvania Supreme Court recognized that *Jensen* had been narrowed, but held that "maritime employees who are performing traditionally maritime functions and are injured over navigable waters, under *Jensen,* are constitutionally barred from recovering under any state workmen's compensation law." *Wellsville,* 534 Pa. at 337, 632 A.2d at 1307. In our Supreme Court's view, *Sun Ship's* recognition of concurrent jurisdiction over land-based injuries within the LHWCA "applied only to that part of the LHWCA which had been extended onto land by the 'land-based' amendments." *Id.* at 337, 632 A.2d at 1307–08. Our Supreme Court's adherence to the strict locality principle is evident from the following passage: "The *Jensen* doctrine, which protects a uniform maritime law and does not deal with land-based activities, was completely unaffected by the *Sun Ship* decision. Under *Jensen,* an injury over navigable waters still falls within the exclusive jurisdiction of the LHWCA." *Id.* at 338, 632 A.2d at 1308. Because the barge upon which the claimant was injured was floating in the river, the claimant's repair activities were on navigable waters and injuries were incurred performing a traditional maritime activity, his work was held *not* to be "maritime but local"; thus, Pennsylvania workers' compensation benefits were not available because the claimant had engaged in traditional maritime work thereby making the LHWCA his sole source of compensation. If a claimant sustains an injury while engaged in a traditional maritime activity on navigable waters, the LHWCA has exclusive jurisdiction over that claim. If *Wellsville* applied, Claimant in this case would not meet the "maritime but local" test and would be ineligible for Pennsylvania workers' compensation benefits.

■ Claimant contends that since he was injured while working on a ship sitting in a dry dock that was not afloat or over water, his injury was land-based, thereby making him eligible for Pennsylvania workers' compensation benefits. The question then becomes whether the nature of the dry dock makes any difference.

There appear to be three different types of dry docks recognized by Section 3(a) of the LHWCA: "(1) A floating dry dock, as its name makes clear, floats on the water, the vessel resting on the bottom of the dry dock after the water has been removed. (2) A graven dry dock is dug into the land. The vessel floats in but rests on land once the water has been pumped out. (3) Finally there is the marine railway, on which the vessel is drawn out of the water, instead of the water being drawn away from the vessel. A ship is no more and no less

---

9. Other states in determining if the work is "maritime but local" focus on the relationship and contacts that the employer and employee have to the state in which the injury occurs. In *Norfolk Shipbuilding & Drydock Corp. v. Duke,* 14 Va.App. 1027, 420 S.E.2d 528 (1992), an employee was injured on navigable waters in the course of his employment with a shipbuilder. The employment was held to be "maritime but local" because both the injured employee and the corporate employer were Virginia citizens, the work was performed in Virginia waters and resulted from a local employment contract, and the employer-employee relationship was a proper subject of state interest and control. *See also Beverly v. Action Marine Services, Inc.,* 433 So.2d 139 (La. 1983); *AllSouth Stevedoring Co. v. Wilson,* 220 Ga.App. 205, 469 S.E.2d 348 (1996).

on land when it rests in a graven dry dock than when it rests on a marine railway." *Avondale Marine Ways, Inc. v. Henderson,* 346 U.S. 366, 367, 74 S.Ct. 100, 98 L.Ed. 77 (1953) (Burton, J., concurring). *Wellsville* holds that a worker employed in a maritime capacity on a floating dry dock is precluded under *Jensen* from receiving state workers' compensation. With regard to a marine railway dry dock, the United States Supreme Court in *Calbeck,* in discussing Avondale Marine Ways, commented that a worker injured on a marine railway dry dock was eligible for state workers' compensation because the ship was located on land stating:

> The issue in *Avondale Marine Ways v. Henderson,* 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, was whether compensation was available under the Longshoremen's Act for the death of an employee killed while engaged in the repair of a vessel which was then physically located on land, but on a marine railway. Since a marine railway was considered to be a 'dry dock,' the injury satisfied [section] 3(a)'s requirement that it occur 'uponnavigable waters,' defined in [section] 3 as 'including any dry dock.' At the same time, since the injury did, in a physical sense, occur on land, there is little doubt that a state compensation act could validly have been applied to it. *See State Industrial Commission of State of New York v. Nordenholt Corp.,* 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933.

*Calbeck,* 370 U.S. at 129, 82 S.Ct. 1196; *see also Lisenby v. Texas Employers' Insurance Association,* 487 S.W.2d 366 (Tex.Civ. App.1972).

While no case can be found that addresses whether a claimant injured while repairing a ship in a graven dry dock is precluded from seeking state workers' compensation benefits, *Calbeck* teaches us that what matters in making a determination is that if *"the injury did, in a physical sense, occur on land,"* then *Jensen* would not preclude jurisdiction of the state workers' compensation system. Because we agree with Justice Burton's comments in *Avondale Marine Ways* that: "[a] ship is no more and no less on land when it rests in a graven dry dock than when it rests on a marine railway," an injury that occurs in a graven dry dock while the ship is not afloat is "in a physical sense" on land. Because Claimant was injured in a graven dry dock while the ship was not afloat, Claimant has access to both LHWCA and Pennsylvania workers' compensation benefits.

Accordingly, we reverse the decision of the WCJ and the Board finding that the Act does not apply and remand for a determination as to whether Claimant is entitled to benefits.

### ORDER

AND NOW, this *27th* day of *September,* 2006, the order of the Workers' Compensation Appeal Board, dated March 30, 2006, at No. A05–1193, is reversed and the matter is remanded for a determination as to whether Petitioner is entitled to benefits under the provisions of the Pennsylvania Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

Jurisdiction relinquished.